ASHLEY, APPELLEE, *v.* ASHLEY, APPELLANT.*

(No. 5603—Decided December 10, 1962.)

*Messrs. Green & Green,* for appellee.
*Messrs. Peppers, Romanoff & Moran,* for appellant.

FESS, J.   This is an appeal on questions of law from a finding and judgment that the defendant has been guilty of gross neglect of duty and adultery and granting a divorce to the plaintiff.

In his original petition seeking a divorce filed on January 9, 1959, plaintiff charged defendant with gross neglect of duty,

*Motion to certify the record overruled (38078), June 12, 1963.

and on July 23, 1960, after the birth of a second child, he filed an amended petition charging defendant with gross neglect of duty and adultery and, *inter alia*, alleges that defendant was, in May 1960, delivered with a child, for the paternity of which the plaintiff denies all responsibility, but alleges that the conception of such child and its birth were the result of the defendant's adulterous conduct.

Several days prior to the commencement of the trial defendant filed an answer in which she alleged that the plaintiff had been guilty of gross neglect of duty and extreme cruelty, and a cross petition in which she also sought a divorce on the ground of gross neglect of duty, extreme cruelty and willful absence for more than one year. Over objection of counsel for the defendant that six weeks had not elapsed from the time of service of summons on defendant's cross-petition the court refused a continuance and proceeded with the trial. However, toward the close of the trial counsel for the defendant moved to dismiss the cross-petition without prejudice. At this stage of the proceeding the court announced that it would only permit the cross-petition to be dismissed with prejudice, but after the trial retracted such decision and permitted the dismissal of the cross-petition without prejudice. By the voluntary dismissal of her cross-petition we are of the opinion that any error incident to the trial of the case prior to the expiration of six weeks was waived.

The evidence discloses that the plaintiff, while serving as a member of Congress, married the defendant in Virginia on August 9, 1956, and that thereafter on November 24, 1956, their first child was born. Immediately after the marriage, during the evening of the day thereof, the plaintiff left Washington to engage in his campaign for re-election to Congress. The defendant went to and lived with her sister and the latter's husband until sometime in November when she moved into the plaintiff's Washington apartment. Plaintiff did not return to Washington until January of 1957. Plaintiff testified that the parties shared his apartment for about two weeks, and that from the time he left the apartment until the date of the trial he had never been alone with the defendant.

Defendant testified that she had met the plaintiff on a number of occasions after January 1957, generally at his office.

She was not specifically asked whether she had had sexual relations with the plaintiff during the presumed period of conception of the second child nor did she otherwise specifically refute the testimony of the plaintiff that he had no such relations with the defendant after leaving her in 1957 or thereafter. The defendant admitted under cross-examination that the only times she was ever alone with plaintiff from the time of their final separation was once in July and once in August 1959. She testified further that she had no sexual intercourse with any person other than the plaintiff after their separation and also specifically denied that she had ever had any intercourse with the man alleged to have been the father of the second child.

The evidence adduced in support of the charge of gross neglect of duty consists of evidence of outbursts of temper, including some profanity, which could well be attributed to have been provoked by the plaintiff's refusal to live with her and to answer telephone calls made by her to his office seeking support for herself and the first child and also seeking tickets and invitations for social events. These tantrums occurred in the presence of plaintiff and others. Most of the instances occurred in the office of the plaintiff. The evidence adduced on behalf of the defendant tends to show that the plaintiff was guilty of gross neglect of duty, extreme cruelty (including a beating from which she suffered a blackened eye and two broken ribs requiring treatment by a physician) and drunkenness, and there is some evidence tending to show adulterous conduct on his part.

On review of the record, we conclude that the finding that the defendant was guilty of gross neglect of duty is against the manifest weight of the evidence.

The evidence in support of the charge of adultery consists primarily of the birth of a second child on May 5, 1960. During the course of the trial there was introduced in evidence an opinion of the Municipal Court of the District of Columbia in an action brought by the defendant for support of the two children, finding and adjudging that the plaintiff was the father of the second child.

Pursuant to the action brought by the defendant against the plaintiff in the Municipal Court of the District of Columbia, an order was made in 1957 allowing defendant alimony and

support for the minor child in the sum of $250 per month. After the second child was born, defendant filed a further application for an increase in alimony and child support, which plaintiff opposed on the ground that he was not the father of the child. After several hearings at which evidence was presented, including a blood test which did not exclude the plaintiff as father of the second child, on June 12, 1961, the aforesaid Municipal Court rendered its opinion in which it reviewed the testimony as well as the law and reached the conclusion that the plaintiff is the father of the second child. The amount of support for the defendant and her two children was increased to the sum of $375 per month from and after July 5, 1961. This opinion was introduced in evidence at the trial of the instant case without objection as an exhibit subject to a stipulation that the judgment was pending upon appeal. Since the hearing of this appeal, we are advised that the Washington judgment has been affirmed upon appeal. It is observed that the issues of separate maintenance of the defendant and support of the minor children are vested in the Municipal Court of the District of Columbia, and may not be relitigated in the instant action for divorce.

In addition to the conceded fact of the birth of the second child, there is some testimony tending to show that the defendant was in the company of a man other than the plaintiff, but not alone or under suspicious or imprudent circumstances. There is also testimony of an acquaintance and a sister of the defendant of admissions by the defendant that this other man was the father of the second child. With respect to this testimony, we are prone to observe, as did the judge of the Municipal Court of the District of Columbia with regard to the testimony in that case, that such testimony ''was unbelievable, even though it had not been given willfully as untruths.'' Admission of infidelity on the part of a married woman is extremely rare. A divorce court will carefully scrutinize evidence tending to prove adultery, particularly alleged admissions of the defendant. *Geiger* v. *Geiger*, 80 Ohio App., 161. It is hardly conceivable that a woman, married to a man of prominence with substantially more than average income, would admit to an acquaintance or even to her sister that she was *enceinte* with a child of another man—a mere acquaintance.

The strong presumption that a child born in lawful wedlock is legitimate, which may only be rebutted by clear and convincing evidence that the husband could not possibly be the father of the child, prevails in Ohio. 7 Ohio Jurisprudence (2d), 490, Section 66; *State, ex rel. Walker,* v. *Clark,* 144 Ohio St., 305, overruling paragraph two of the syllabus in *Powell* v. *State, ex rel. Fowler,* 84 Ohio St., 165; *Whitecotton* v. *Whitecotton,* 103 Ohio App., 149; *Quasion* v. *Friedman,* 110 Ohio App., 166.

As a general rule, proof of adultery can be established in Ohio by a preponderance of the evidence upon proof of circumstances from which guilt can be inferred, but such proof must be clear, positive and sufficiently definite to show the circumstances under which it was committed. 17 Ohio Jurisprudence (2d), 725, Section 67. However, in a case such as the instant one wherein the proof relied upon is principally the birth of the second child, the presumption of legitimacy can only be rebutted by clear and convincing evidence that the plaintiff could not possibly be the father of the child.

It is, therefore, concluded that the finding of adultery is also against the manifest weight of the evidence.

Furthermore, the finding and judgment of the District of Columbia court is *res judicata* on the issue of adultery presented in the instant case as well as the paternity of the second child.

It is a fundamental principle of jurisprudence that material facts or questions which were in issue in a former action, and were there admitted or judicially determined, are conclusively settled by a judgment rendered therein, and that such facts or questions become *res judicata* and may not again be litigated in a subsequent action between the same parties or their privies, regardless of the form the issue may take in the subsequent action, whether the subsequent action involves the same or a different form of proceeding, or whether the second action is upon the same or a different cause of action, subject matter, claim, or demand, as the earlier action. In such cases, it is also immaterial that the two actions are based on different grounds, or tried on different theories, or instituted for different purposes, and seek different relief. 30A American Jurisprudence, 411, Section 371. A myriad of authorities are cited in support of the text, including Ohio cases. Thus, it is held in Ohio that a final judgment or decree rendered upon the merits, without

fraud or collusion, by a court of competent jurisdiction is conclusive of rights, questions and *facts* in issue as to the parties and their privies, and is a complete bar to any subsequent action on the same claim or cause of action between the parties or those in privity with them. *Norwood* v. *McDonald et al., Admrs.,* 142 Ohio St., 299. And although a judgment or decree in a former action does not bar a subsequent action where the causes of action are not the same, even though each action relates to the same subject matter, nevertheless, a point or a fact which was actually and directly in issue in a former action and was there determined by a court of competent jurisdiction may not be drawn in question in any future action between the same parties or their privies, whether the cause of action in the two actions be identical or different. *Norwood* v. *McDonald, supra.* A right, question or fact in issue, which was necessarily determined by a court of competent jurisdiction in a judgment which has become final, cannot be disputed or litigated in a subsequent suit between the same parties, although the subsequent suit is based upon a different cause of action. *Vasu* v. *Kohlers, Inc.,* 145 Ohio St., 321. See, also, *Gibson* v. *Solomon,* 136 Ohio St., 101; *Conold* v. *Stern,* 138 Ohio St., 352.

A judgment determining a personal status or right, including matters pertaining to family relations such as questions concerning heirship, legitimacy or paternity, is conclusive in a subsequent litigation involving the *same* issue. 50 Corpus Juris Secundum, 224, Section 734; *Commonwealth* v. *Bednarek,* 62 Pa. Super., 118; *Richardson's Admr.* v. *Borders,* 246 Ky., 303, 54 S. W. (2d), 676; *Commonwealth, ex rel.,* v. *Iacovella,* 121 Pa. Super., 139, 182 A., 727; *Estate of Morrow,* 100 Col., 424, 68 P. (2d), 36; *Montville* v. *Hamblin,* 96 N. H., 356, 77 A. (2d), 113. See, also, 9 Ohio Jurisprudence (2d), 677, Section 20.

The pendency of an appeal does not necessarily prevent the application of the principle of *res judicata* because jurisdiction of the cause of action involving the adjudicated issue remains in the court of first instance which excludes jurisdiction of the court having before it the same issue in a second action. Cf. *Haley* v. *King et al., Admxs.,* 3 Ohio App., 323.

Error was also committed in the overruling of motions of the defendant to strike testimony of the plaintiff comprising exaggerative conclusions with respect to the behavior of the

defendant and in the curtailment of cross-examination of plaintiff's witnesses with respect to admissions of infidelity on the part of the defendant.

It is, therefore, concluded that the judgment of the Common Pleas Court is manifestly against the weight of the evidence, and that the judgment should be reversed and the cause remanded thereto for a new trial.

Such judgment is reversed and the cause remanded to the Common Pleas Court for a new trial.

*Judgment reversed.*

SMITH and DEEDS, JJ., concur.