STATE of Iowa ex rel. Lisa
Marie CASAS, A Minor
Child, Appellee,

v.

Charles F. FELLMER, Appellant.

No. 93–1021.

Supreme Court of Iowa.

Sept. 21, 1994.

David W. Stamp of Ball, Kirk, Holm & Nardini, P.C., Waterloo, for appellant.

Bonnie J. Campbell, Atty. Gen., John Parmeter, Asst. Atty. Gen., and Kay Delafield, Asst. Atty. Gen., for appellee.

Considered by McGIVERIN, C.J., and LARSON, CARTER, SNELL, and ANDREASEN, JJ.

SNELL, Justice.

I. Introduction

Charles Fellmer (Fellmer) appeals from the Black Hawk County District Court's order establishing his paternity of Lisa Casas (Lisa), and ordering his payment of accrued and current child support. In 1977 the same court approved a settlement of a paternity action brought by Lisa's mother, Sandra Casas (Casas). In approving the compromise, the district court expressly found that Fellmer was not Lisa's father. On appeal, Fellmer claims the present cause of action of the State, which represents Lisa in this matter, is barred by the doctrine of issue preclusion. We reverse.

II. Standard of Review

■ Our standard of review in this equity action is de novo. Iowa R.App.P. 4. We give weight to the trial court's factual findings, but are not bound by them. *Israel v. Farmers Mut. Ins. Ass'n,* 339 N.W.2d 143, 146 (Iowa 1983). Of course, we also review cases on appeal for legal error. Iowa R.App.P. 4.

III. Facts

On November 19, 1975, Casas filed a paternity action against Fellmer. Casas was pregnant with Lisa at the time. Fellmer denied paternity. In June 1977 Casas and Fellmer reached a compromise regarding the paternity dispute. The district court issued an order approving the compromise on June 14, 1977. As part of that order, the court expressly found that "upon the facts set forth in said Compromise that Charles F. Fellmer is not the father of said Lisa Casas." Casas dismissed her complaint against Fellmer with prejudice.

On January 3, 1992, the State sought again to establish Fellmer's paternity of Lisa in order to compel the payment of accrued and current child support. Fellmer brought a motion to dismiss the action on the ground that the 1977 Order Approving Compromise precluded the State's action. The district court denied Fellmer's motion. A blood test now shows the probability of Fellmer's paternity of Lisa to be 99.47%. Based on this blood test, the district court found Fellmer to be Lisa's father. The court ordered Fellmer to pay accrued and current child support for Lisa.

IV. Discussion of Law—General Principles

■ The doctrine of issue preclusion, or collateral estoppel, serves a dual purpose. *Harris v. Jones,* 471 N.W.2d 818, 819 (Iowa 1991). First, the doctrine protects litigants from the vexation of relitigating identical issues with identical parties or those persons

with a sufficient connective interest to the prior litigation. *Id.* Second, it promotes the interest of judicial economy by preventing unnecessary litigation. *Id.; see also Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552, 559 (1979).

■ For issue preclusion to apply four prerequisites must exist: (1) the issue must be identical to the one previously decided; (2) the issue must have been raised and litigated in the previous action; (3) the issue must have been material and relevant to the disposition of the previous action; and (4) the previous determination made on the issue must have been necessary and essential to the resulting judgment. *Hunter v. City of Des Moines,* 300 N.W.2d 121, 123 (Iowa 1981).

■ Formerly, the doctrine of issue preclusion was available only to parties bound by the prior judgment. *Harris,* 471 N.W.2d at 820. In *Hunter* we abandoned that requirement. *Hunter,* 300 N.W.2d at 125. Under our current standard, to invoke issue preclusion a defendant need only show the plaintiff "was so connected in interest with one of the parties in the former action as to have had a full and fair opportunity to litigate the ... issue and be properly bound by its resolution." *Id.* at 123.

## V. Whether the Issue of Paternity was Raised and Litigated in the First Action

The district court held that Fellmer failed to meet the second prong of our *Hunter* test (issue not raised and litigated). Fellmer first notes the issue of paternity was raised by Casas' 1975 petition. Fellmer further contends the issue was "litigated" by virtue of his compromise with Casas and the subsequent approval of that compromise by the court. The State contends that in order for an issue to be "litigated" it must be put to proof at trial.

The State relies on our decision in *Jordan v. Stewart Creamery, Inc.,* 258 Iowa 1, 11, 137 N.W.2d 259, 265 (1965), to support its position. In that case, we stated "[f]or collateral estoppel [issue preclusion] to apply, the particular matter must have been considered and passed upon. It, therefore, cannot apply unless there is an actual trial." *Id.* However, since our decision in *Jordan,* we have modified this standard. In *In re Evans,* 267 N.W.2d 48, 51 (Iowa 1978), we dealt with the question of whether a county could litigate the issue of paternity when the issue was earlier determined in a child support modification proceeding. In *Evans,* the district court had modified the original dissolution decree that obligated the husband to pay child support. The modification order based on a stipulation of the parties, stated that the child was not the husband's and ordered that he "shall not be obligated to pay child support." *Id.* at 50. Later, the County Board of Welfare attempted to collect child support through garnishment proceedings. In those proceedings the district court vacated the prior modification order. On appeal, we reversed the district court's vacation of the modification decree and paternity determination on the ground of issue preclusion. *Id.* at 51. We held the county had a full and fair opportunity to litigate the issue of paternity in the modification proceeding. *Id.*

In *Mulkins v. Board of Supervisors,* 374 N.W.2d 410, 415 (Iowa 1985), we held that "issue preclusion prohibits parties from relitigating issues in a subsequent action that were conclusively determined in a prior action in which a judgment was entered." In *Buckingham v. Federal Land Bank Association,* 398 N.W.2d 873, 876 (Iowa 1987), we held that issue preclusion is applicable when parties dismiss their cases with prejudice.

■ Thus, the existence of a full-blown trial is not prerequisite to applying the doctrine of issue preclusion. It is enough that the issue be conclusively determined in a prior action in which judgment is entered. *Mulkins,* 374 N.W.2d at 415. The case at bar is nearly identical to the facts in *Evans. See Evans,* 267 N.W.2d at 48–51. We believe the issue was litigated when the court approved the compromise in which Casas agreed that Fellmer was not Lisa's father. The facts of this case therefore satisfy the second element of the *Hunter* formulation.

## VI. Whether Previous Determination was Necessary to Resulting Judgment

According to the district court, issue preclusion was also inapplicable because the fourth element of our *Hunter* test was not met. The district court held the prior determination of the paternity issue was unnecessary to the resulting judgment.

Fellmer contends that in order for the court, in 1977, to evaluate and approve the fairness of the compromise between himself and Casas, it was necessary for it to evaluate the likelihood of establishing his paternity. The State contends the approval of a cash payment by Fellmer to Casas as part of the settlement agreement is inconsistent with the court's finding of no paternity. This inconsistency, the State argues, demonstrates that the court's finding was not necessary to its final judgment. Also the State contends the finding of no paternity is not supported in the original court record.

We believe it is beyond dispute that the district court's 1977 finding on the issue of paternity constituted the essence of the court's decision to approve the parties' compromise. The court could not have determined the fairness of the parties' compromise and settlement without evaluating and making a determination on the paternity issue. Thus, we hold the fourth prerequisite element to applying issue preclusion was met.

## VII. Parties Bound by Prior Litigation

The district court also rested its decision not to apply issue preclusion on the ground that the same parties were not involved in the prior case. Fellmer claims this was error. He reminds us that identity of the parties is no longer a prerequisite to applying issue preclusion. Moreover, he contends the State, acting on behalf of Lisa, is so connected in interest with Casas' interest in the prior litigation to have had a full and fair opportunity to litigate the paternity issue.

The State asserts that Lisa's interests in establishing paternity vary significantly from her mother's and that Lisa has a "fundamental right" to bring her own action to establish Fellmer's paternity. Thus, the State contends Lisa's interest is not so connected to her mother's interest in the prior litigation as to have had her interest fully and fairly litigated. To rule otherwise, the State argues, would be a deprivation of Lisa's due process rights, presumably under the Fifth and Fourteenth Amendments to the federal constitution. Finally, the State contends its interest in establishing Fellmer's paternity is not sufficiently connected to Casas' interest in the prior litigation to the extent that it was fully and fairly litigated. The State claims its interest derives from the fact that Lisa now relies on public assistance for her support—giving the State the right to seek an "alternative or additional remedy." *See* Iowa Code § 252A.8 (1991).

The State acts only on its behalf when bringing actions for the collection of child support. Iowa Code § 252B.7(4). However, the State is authorized to "file and prosecute ... [c]ases under Chapter 252A, the Uniform Support of Dependents Law [USDL]." *Id.* § 252B.7(1)(b). In prosecuting cases under the USDL, the State represents the interests of dependents in securing support from persons legally responsible for their support. *Id.* § 252A.1, .2(3), (5), (6). Normally, where paternity is an issue in an action to compel support under chapter 252A, the paternity issue may be resolved. *See, e.g., State ex rel. Warren v. Mahan,* 329 N.W.2d 673, 674 (Iowa 1983). However, we believe the 1977 court's resolution of the paternity issue is binding on both the State and Lisa in this action to compel the payment of child support.

Lisa's interest in child support from Fellmer is so connected in interest with her mother's as to have had a full and fair opportunity to litigate that issue and be properly bound by its resolution. *See Hunter,* 300 N.W.2d at 123; *see also Opheim v. American Interinsurance Exch.,* 430 N.W.2d 118, 121 (Iowa 1988) (nonmutual party had full and fair opportunity to litigate issue of insurance coverage and was properly bound by resolution in former action). With regard to whether Fellmer owes Casas child support for Lisa's care, any claim Lisa has to that support derives directly through Casas. *See, e.g., Buckingham,* 398 N.W.2d at 875.

Regarding the State, its only interest in the case occurs directly through Lisa—whose interest occurs directly through Casas. Thus, any interest the State has in establishing Fellmer's paternity in order to compel his payment of child support to Casas was fully and fairly litigated in the 1977 action.

The doctrine of issue preclusion bars the State's claim in this case. The district court's decision is reversed.

**REVERSED.**